Curia,per

Evans, J.
There are four periods, in the history of this case, at one of which the statute must have commenced *23 to ran; 1st. When Ervin neglected 10 enter up judgment iu 1821; 2d. When Wiggins assigned his property in 1828 ; 3d. When Ervin sued Wiggins in 1829, in the name of Thomas, who had oeen eight years dead; 4th. When it was fully ascertained, by the decree of the Court of Equity in 1836, that the debt was lost.
The three first of these periods are more than four years from the commencement of this action in 1838, so the question is reduced to the inquiry, whether the statute commenced to run before the effect of Ervin’s negligence was fully ascer tain ed by the final decree of the Court of Equity in 1836.
In the consideration of the case we must carefully distinguish between the act fiom which the plaintiffs’ loss arose, and the effect which resulted from that act. The plaintiffs’ complaint is that Ervin, as their attorney, so negligently managed their case, that they have lost their debt. It is the negligence, then, of which they complain. The loss of the debt is a consequence of the negligence, and these stand towards each other in the relation of cause and effect. If Ervin had entered up judgment and issued execution, the subsequent assignment of Wiggins, the suit of 1829, and the final decree, would have been wholly immaterial to the plaintiffs. They would have had a lien on Wiggins’ estate, which nothing afterwards occurring could defeat. I think therefore we may safely conclude that the plaintiffs’ cause of action was the negligence of the attorney, and that what occurred afterwards was but the consequence of that neglect.
If this case be considered in reference to authorities, the same conclusion will follow. I am not aware that the question has been settled in our own courts, but it has often been decided in England and in the other states of our confederacy. Thus in Miller vs. Adams, (16 Mass. R. 456,) which was an action against a sheriff for negligently making an insufficient return. The return was in 1808, and judgment the same year: in 1814 the judgment was reversed by writ of *24 error on account of the insufficiency of the return. The question was, at what time did the action accrue of the plaintiff. The court say, “we are all of opinion the action accrued on the return of the writ into the clerk’s office.” So also, in Short vs. McCarthy, (3 Barn. & Ald. 626,) the attorney, who had been employed for the purpose, neglected to examine whether certain stock which the plaintiff was about to purchase, stood in the seller’s name on the books of the bank of England. The attorney reported that it did, and, upon the faith of this, the plaintiff purchased. More than six years afterwards it was ascertained that the report made by the attorney was untrue, and the plaintiff consequently lost the benefit of his purchase. The court held that the statute began to run from the time of the attorney’s neglect. The same principle was decided in New York in the case of Troup vs. ex’ors. of Smith (20 Johns. R. 33.) But the case which most nearly resembles this in every particular is that of Wilcox vs. Executors of Plummer, (4 Peters’ R. 172.) A note of one Banks, endorsed by Hawkins, was placed in the hands of Plummer, an attorney, on the 28th January, 1820. Judgment was recovered against Banks on the 20th August, 1820, but he proved insolvent. In February 1821, the attorney sued Hawkins in the name of wrong plaintiffs, and was nonsuited in 1824. In the mean time the note, as to Hawkins, was barred by the statute of limitations, the action which had been brought being a mere nullity. Thereupon the plaintiffs sued Plummer in the circuit court of the United States for the district of North Carolina. The case turned upon the question whether the statute of limitations began to run from the time of the attorney’s neglect to sue Hawkins, within a reasonable period after receiving the note, or at the time when the effect of this negligence was manifested by the nonsuit of the plaintiffs. The supreme court decided that the statute commenced at the time of the negligence.' Between that case and this, there is a remarkable similitude in every particular. *25 la both, the relation of client and attorney continued to exist until the debts were finally ascertained to be lost, and the negligence of Plummer was as continuous as that of Ervin.
By our statute of limitations, an action must be brought within four years after the cause of it has accrued; so that the question always is, when could the plaintiff have had his action ? The answer is, whenever the contract has been violated, if it be on a contract, or, if it be for a tort, then when the act was done from which the injury to. the plaintiff arose. It may be, that the full extent of the injury is not developed, but that cannot vary the case. Can it be doubted that the plaintiffs could have sued Ervin after he had neglected to enter up judgment, so as to create a lien on Wiggins’s property, or that the jury might have given damages for the injury they had sustained ? In the case of Russel vs. Palmer, (2 Wilson, 328,) one Steward had been sued and held to bail. He was afterwards surrendered by his bail; but the attorney neglected to charge him in execution; in consequence of which neglect, Steward was discharged. Lord Camden directed the jury to find against the attorney for the whole debt, ¿£3000. A new trial was granted, because, the action being for damages, the jury should have been left to find what damage they thought fit. On the next trial, they gave ¿£500, Steward not appearing to be insolvent, or unable to pay the debt.
From all the cases, I think it manifest that the plaintiffs’ action accrued from Ervin’s neglect to enter up judgment and issue execution against Wiggins. If the damage was the cause of action, then it would follow that a new action might be brought for every new developement of damage; and the plaintiffs might have sued Ervin for the negligence in 1821, and again when the debt was jeoparded by Wiggins’s assignment ; and, if in these two actions they did not recover the whole debt, they might sue again for the balance after the final decree. But the reverse of this has been decided in *26 Fetter vs. Beale, (1 Salk., 11.) Upon the whole, we are all of opinion that the plaintiffs’s action was barred by the statute of limitations; so the motion for a new trial is refused.
Law for the motion.